UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDERSON & ANDERSON LLP-GUANGZHOU; GUANGDONG HUATU LAW FIRM; & BEIJING KAIMING LAW OFFICES,

Plaintiffs,

v.

NORTH AMERICAN FOREIGN TRADING CORP., & THE ESTATE OF EDITH LOWINGER.

Defendants.

No. 19-cv-03369

**COMPLAINT FOR BREACH OF CONTRACT, QUANTUM MERUIT, BREACH OF IMPLIED-IN-FACT CONTRACT, BREACH OF FIDUCIARY DUTY, AND UNJUST ENRICHMENT.**

**JURY TRIAL DEMANDED**

Plaintiffs Anderson & Anderson LLP-Guangzhou, Guangdong Huatu Law Firm, and Beijing Kaiming Law Offices, allege:

**PRELIMINARY STATEMENT**

1. This is an action to recover fees, money, disbursements, and interest due to Plaintiffs for services rendered in China on behalf of the Defendants.

2. On October 4, 2005, the International Centre for Dispute Resolution Commercial Arbitration Tribunal issued a decision granting Defendant North American Foreign Trading Corp. an arbitration award for monetary damages in the amount of TWENTY TWO MILLION, NINETY SIX THOUSAND, THREE HUNDRED SEVETY SIX DOLLARS AND EIGHTY ONE CENTS ($22,096,376.81), plus simple annual 9% interest on any unpaid portion of that amount from August 15, 2003 forward (the "Arbitration Award"). The Arbitral Tribunal issued the Arbitration Award in Defendant North American Foreign Trading Corp.'s favor against a series of Chinese corporations doing business in and around the city of Shenzhen, in Guangdong

Province, China.

3. Shortly thereafter, Defendant NAFT approached Plaintiff Anderson & Anderson LLP-Guangzhou, who introduced them to Guangdong Huatu Law Firm, to assist Defendant in enforcement proceedings in China in the hope of monetizing the award, and on December 29, 2005, Plaintiffs Guangdong Huatu Law Firm entered into a written Contingency Contract outlining the parties' intentions and stipulating the contingency fee amount payment to Plaintiffs for their recovery efforts.

4. On or about January 26, 2006, Plaintiffs Anderson & Anderson LLP-Guangzhou, and Guangdong Huatu Law Firm, commenced legal enforcement proceedings in China.

5. On June 24, 2009, after more than three years of diligent prosecution efforts, the parties agreed to bring in Plaintiff Beijing Kaiming Law Offices to assist Plaintiffs Anderson & Anderson LLP-Guangzhou and Guangdong Huatu Law Firm in their enforcement efforts.

6. On November 3, 2009, a three-judge panel of the Intermediate People's Court of Shenzhen City issued a Civil Decision recognizing and enforcing the Arbitration Award, which Plaintiffs had initially submitted to the Intermediate People's Court for consideration on February 7, 2006.

7. The Civil Decision allowed Plaintiffs to attach 172,544,050 shares of restricted tradable stock held by respondent Lionda Group, which the independent appraiser appointed by the Intermediate People's Court of Shenzen City valued at 283,250,000 RMB as of September 30, 2009 (this valuation was equivalent to FOURTY-ONE MILLION FOUR HUNDRED EIGHTY-EIGHT THOUSAND FOUR HUNDRED FIFTY-SEVEN DOLLARS ($41,488,457) under the prevailing exchange rate in effect on that date).

8. On or about October 8, 2010, Defendants, against the advice and counsel of

Plaintiffs, sold the entirety of the attached assets for ELEVEN MILLION TWO HUNDRED THOUSAND DOLLARS ($11,200,000) in partial satisfaction of the Arbitration Award. Defendants simultaneously released the balance of the Arbitration Award for nominal consideration in the amount of one RMB.

9. At the time of cash settlement, the unpaid balance of the Arbitration Award had grown to approximately THIRTY-SIX MILLION THREE HUNDRED FIFTEEN THOUSAND THREE HUNDRED NINETY-FIVE DOLLARS ($36,315,395), inclusive of interest charges.

10. Pursuant to the Contingency Contract and the Supplementary Agreement, Plaintiffs have sought to recover, by multiple means and in various venues over the years, their outstanding fees from Defendants. Unfortunately, Defendants' persistent intransigence has necessitated the present action.

**JURISDICTION AND VENUE**

11. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. This Court has jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1338(b) and 1367.

12. This Court has personal jurisdiction over Defendants and venue is proper under 28 U.S.C. § 1391(b)(1) and 1391(c)(2) because Defendant North American Foreign Trading Corp. maintains its principal place of business at 105 Madison Avenue, New York, New York 10016, and Defendant decedent, Edith Lowinger, maintained her primary residence and was domiciled in New York.

**THE PARTIES**

13. At all relevant times hereafter mentioned, Plaintiff Anderson & Anderson LLP-Guangzhou was and is a firm engaged in legal practice, formed as a limited liability entity with its principal place of business located in Guangzhou, Guangdong Province, China.

14. At all relevant times hereafter mentioned, Plaintiff Beijing Kaiming Law Offices is a registered Chinese law firm, with its principal place of business located in Beijing, China.

15. At all relevant times hereafter mentioned, Plaintiff Guangdong Huatu Law Firm is a registered Chinese law firm, with its principal place of Business located in Shenzhen City, Guangdong Province, China.

16. Upon information and belief, and at all relevant times hereafter mentioned, Defendant North American Foreign Trading Corp. is a corporation organized under the laws of the State of New York with its principal place of business and main office at 105 Madison Avenue, New York, New York, 10010.

17. Upon information and belief, and at all relevant times hereafter mentioned, Defendant decedent, Edith Lowinger, was a United States citizen domiciled in the State of New York.

**FACTUAL BACKGROUND**

18. On October 4, 2005, the International Centre for Dispute Resolution Commercial Arbitration Tribunal issued a final decision in the matter of *North American Foreign Trading Corporation v. Shenzhen Lionda Group Corporation, Shenzhen Lionda Technology Co., Ltd, Shenzhen Chang Ping Import & Export Co., Ltd. and Shenzhen Light Industrial Import & Export Co., Ltd.* (No. 50 181 T 002551 04) granting North American Foreign Trading Corp. an arbitration award for monetary damages in the amount of TWENTY TWO MILLION, NINETY SIX THOUSAND, THREE HUNDRED SEVETY SIX DOLLARS AND EIGHTY ONE CENTS ($22,096,376.81), plus simple annual 9% interest on any unpaid portion of that amount from August 15, 2003 forward (the "Arbitration Award").

19. A complete and accurate copy of the Arbitration Award is attached hereto as

**Exhibit 1.**

20. Shortly thereafter, in late 2005, Defendant North American Foreign Trading Corp. (hereafter "NAFT") contacted Plaintiff Anderson & Anderson LLP-Guangzhou (hereafter "Anderson") to request Plaintiff Anderson's assistance enforcing the Arbitration Award in China against the judgment debtors Shenzhen Lionda Group Corporation, Shenzhen Lionda Technology Co., Ltd, Shenzhen Chang Ping Import & Export Co., Ltd. and Shenzhen Light Industrial Import & Export Co., Ltd., (collectively, hereafter "Lionda Group").

21. Since Lionda Group was located in Shenzhen, Guangdong Province, Plaintiff Anderson referred Defendant NAFT to Plaintiff Guangdong Huatu Law Firm (hereafter "Huatu") whose primary office was also located in Shenzhen.

22. On or about December 29, 2005, Plaintiff Huatu and Defendant NAFT entered into a written agreement outlining the parties' roles and responsibilities and stipulating the fees to be paid to Plaintiff Huatu for their recovery efforts (the "Contingency Contract").

23. Though not a direct signatory to the Contingency Contract, Mr. David C. Buxbaum, from Plaintiff Anderson's office was appointed as one of the three named agents entrusted to handle the case.

24. A complete and accurate copy of the Contingency Contract is attached hereto as **Exhibit 2.**

25. Pursuant to the terms of the Contingency Contract, Defendant NAFT agreed to pay Plaintiff Huatu a success fee of eighteen percent (18%) of the value of any money, goods, or other consideration obtained through Plaintiff Huatu's enforcement actions.

26. The Contingency Contract also provided that if Defendant NAFT reached a direct settlement of the enforcement proceedings with Lionda Group, then Plaintiff Huatu would be

entitled to a success fee of eighteen percent (18%) of the value of the creditor's rights confirmed through the enforcement proceedings.

27. The Contingency Contract further stipulated that if Defendant NAFT unilaterally terminated the Contingency Contract then Defendant NAFT would still be obligated to pay Plaintiff Huatu the specified eighteen percent (18%) success fee based upon the amount of any creditor's rights confirmed through enforcement proceedings.

28. Defendants never terminated the Contingency Contract.

29. On or about January 26, 2006, Plaintiffs Huatu and Anderson commenced enforcement proceedings in China against Lionda Group with the intent of converting the Arbitration Award into an enforceable judgment.

30. By way of investigation during their enforcement efforts, Plaintiffs Huatu and Anderson discovered materially valuable shares of stock owned by Lionda Group in a publicly traded company which they sought to attach for Defendants benefit.

31. On or about June 24, 2009, after more than three years of diligent prosecution efforts the parties agreed to bring in Plaintiff Beijing Kaiming Law Offices (hereafter "Kaiming") to assist Plaintiffs Huatu and Anderson in their enforcement efforts. The parties subsequently entered into a supplemental agreement (hereafter the "Supplementary Agreement").

32. A true and accurate copy of the Supplementary Agreement is attached hereto as **Exhibit 3**.

33. The Supplementary Agreement maintained the same contingency-based success fee of eighteen percent (18%) of all monies or assets enforced and obtained by the Plaintiffs but reallocated the amounts payable to each of the respective Plaintiffs.

34. The Supplement Agreement reduced Plaintiff Huatu's proportion of the success

fee to eight percent (8%). This reduction meant Plaintiff Anderson (who was to receive three percent (3%) of the fee), and Plaintiff Kaiming (who was to receive the remaining seven percent (7%)) could share the remaining ten percent (10%) of the total fee amount.

35. Unlike the Contingency Contract, which placed no time limit on Plaintiff Huatu's enforcement efforts, the Supplementary Agreement was intended to remain in effect until December 31, 2009.

36. Notwithstanding the stated time bar, the Supplementary Agreement clearly stated that whenever a Chinese court sealed the assets of Lionda Group, and Plaintiff Huatu continued to undertake legal work for the enforcement of those rights, and provided that Plaintiff Huatu had provided the information pertaining to the sealed assets, then the Supplementary Agreement entitled Plaintiffs Huatu and Anderson to compensation in accordance with the success fee.

37. A handwritten amendment on the Supplementary Agreement further elaborated that if, on or before December 31, 2009, a Chinese court entered judgment granting enforcement of the arbitral decision then the Supplementary Agreement would entitle Plaintiffs Anderson and Kaiming to their respective compensation.

38. On November 3, 2009, a three-judge panel of the Intermediate People's Court of Shenzhen City issued a Civil Decision (the "Chinese Judgment") recognizing and enforcing the Arbitration Award, which Plaintiff Huatu had initially submitted to the Intermediate People's Court for consideration on February 7, 2006.

39. A true and accurate copy of the Chinese Judgment is attached hereto as **Exhibit 4**. A complete and accurate copy of the English translation of the Chinese Judgment is attached hereto as **Exhibit 5**.

40. The Chinese Judgment allowed Plaintiffs to obtain a secured creditor interest in

172,544,050 shares of restricted tradable stock held by Lionda Group; the same publicly traded stock assets that Plaintiffs Huatu and Anderson discovered in their investigation and due diligence efforts.

41. An independent appraiser appointed by the Intermediate People's Court of Shenzen City valued the shares at 283,250,000 RMB as of September 30, 2009, which equated to a USD valuation of FORTY-ONE MILLION FOUR HUNDRED EIGHTY-EIGHT THOUSAND FOUR HUNDRED FIFTY-SEVEN DOLLARS ($41,488,457) based upon the prevailing exchange rate in effect on that date.

42. A complete and accurate copy of the Appraisal Report is attached hereto as **Exhibit 6.** A complete and accurate copy of the English translation of the Appraisal Report is attached hereto as **Exhibit 7**.

43. Soon after Plaintiffs obtained the Chinese Judgment, Defendants began settlement negotiations with Lionda Group.

44. On or about October 8, 2010, Defendants, acting against the advice and counsel of Plaintiffs, entered into the Agreement Concerning the Repayment and Assignment of Creditor's Rights (hereafter the "Settlement Agreement").

45. A complete and accurate copy of the Settlement Agreement (unexecuted) is attached hereto as **Exhibit 8**.

46. Through the Settlement Agreement, Defendants sold their creditors rights, which were secured by the publicly traded shares of stock Plaintiffs Huatu and Anderson had located and sealed in the Chinese Judgment, for the sum of ELEVEN MILLION TWO HUNDRED THOUSAND DOLLARS ($11,200,000) in partial satisfaction of the Arbitration Award. Defendants simultaneously released the balance of the Arbitration Award for nominal

consideration in the amount of one RMB.

47. At the time of cash settlement, the unpaid balance of the Arbitration Award had grown to approximately THIRTY-SIX MILLION THREE HUNDRED FIFTEEN THOUSAND THREE HUNDRED NINETY-FIVE DOLLARS ($36,315,395 USD) inclusive of interest charges.

48. The payment provisions of the Contingency Contract and the Supplementary Agreement, obligated Defendant NAFT to pay Plaintiffs their eighteen percent (18%) success fee upon receipt of the ELEVEN MILLION TWO HUNDRED THOUSAND DOLLAS ($11,2000,000) in cash proceeds received.

49. Plaintiffs have sought to recover, by multiple means and in various venues over the years, their outstanding fees, but Defendant NAFT has refused to issue payment for the successful services rendered by Plaintiffs.

***State Court Action***

50. After exhausting more amicable means of resolving their dispute, Plaintiffs were forced to resort to legal action to preserve their interests.

51. This case was initially filed in the Commercial Division of the New York State Supreme Court on April 15, 2011, with index number 651010/2011 ("State Court Case").[1]

52. Defendant NAFT moved to dismiss the State Court Case, claiming that there was no enforceable contract in effect with the Plaintiffs, but both the New York State Supreme Court and the New York State Supreme Court Appellate Division, First Department, recognized the

[1] The entire case history is available on the NYSCEF E-Docket and is available at this link: https://iapps.courts.state.ny.us/nyscef/DocumentList?docketId=l3l6EUvtMQHts81l47wOlg==&display=jidrHbHgd/NTDtbTxRcPkw==. Selected documents are included as exhibits to illustrate the tenor of the State Court proceedings.

merits of Plaintiffs' claims. In July 2015, the New York State Supreme Court stated on the record:

> "[T]he extreme bottom line is that, in the first place, one thing seems to me quite clear is that when NAFT [*sic*] sold the original agreement and received in return the sum of around $11 million, it became an asset, it became an asset that enforced and obtained and reduced the case of the $11 million is maybe not pretty, but on the other hand, it is reduced to cash. It's real money.... How much money that actually translates into is something that does not need to be litigated, but rather can go to ADR... because you don't need to litigate this... it's quite clear, that it has been reduced, all monies and assets enforce in obtainment reduced to cash, all right, now the question is, how much money goes here, how much money goes there... In my view, reading everything I have before me, I see it that the translation of the arbitration award into cash, into a cash asset, was done in November of 2009, and as a result, the monies came due and owing as of that time and, in fact, *the contract was fulfilled at that time*." (emphasis added).

A complete and accurate transcript of the July 21, 2015 proceeding is attached hereto as **Exhibit 9**. The excerpted quote appears on pages 5-7.

53. Similarly, the New York State Supreme Court Appellate Division, First Department, denied Defendant NAFT's request for dismissal, stating that:

> "[T]he 2009 retainer agreement provided for the payment of the agreed upon contingency fee if a judgment granting enforcement of the arbitral decision was issued by the Chinese court prior to the expiration date. It is undisputed that a copy of such a judgment issued by the Shenzhen Intermediate People's Court on November 3, 2009 is annexed to the complaint. Based on the foregoing, defendant has not demonstrated that documentary evidence conclusively establishes a defense to plaintiffs' contract cause of action as a matter of law." *Anderson & Anderson, LLP—Guangzhou, et al. v. North Am. Foreign Trade Corp.*, 106 A.D.3d 503, 504; 965 N.Y.S.2d 417, 418 (1st Dept. 2013).

54. Based in part on the ruling of the Appellate Division, Plaintiffs filed a Motion for Summary Judgment on September 8, 2016, but the Court never ruled on the motion and instead urged Plaintiffs withdraw their motion.

55. Plaintiffs withdrew their initial motion for summary judgment, as directed by the Court, and subsequently refiled a motion for summary judgment in October 2016. The Court

again refused to issue a ruling on the refiled motion after a reversal in position, deciding that the previously completed discovery period was suddenly incomplete.

56. Despite the obvious and inherent merits of Plaintiffs' claims, Defendant NAFT has utilized every litigation tactic possible to obfuscate, hinder, delay, and ultimately prevent a ruling on the merits of the case, to which they have no legal or equitable defense.

57. Defendants legal gamesmanship has forced Plaintiffs to expend substantial time and resources over the past seven years and counting, attempting to litigate this matter from overseas.

58. In the course of Defendants' quest to exhaust Plaintiffs, while squandering valuable Court time and resources, Ms. Edith Lowinger, the primary Director and sole signatory on all the aforementioned contracts and agreements executed on behalf of Defendant NAFT, died.

59. A complete and accurate copy of the online obituary for Defendant decedent Edith Lowinger is attached hereto as **Exhibit 10**.

60. On November 29, 2017, the New York State Supreme Court, citing the alleged ongoing discovery dispute, dismissed the underlying case without prejudice, and without reaching a decision on the merits.

61. A complete and accurate copy of the Court's Final Judgment is attached hereto as **Exhibit 11**.

62. On or about December 1, 2017, Defendant NAFT appealed the dismissal to the New York Supreme Court Appellate Division, First Department, on September 27, 2017.

63. The New York Supreme Court Appellate Division, First Department, affirmed the dismissal of Plaintiffs' complaint without prejudice on October 18, 2018.

64. A complete and accurate copy of the Appellate Division dismissal is attached hereto as **Exhibit 12**.

65. Thus, the New York Supreme Court Appellate Division, First Department dismissed the case without prejudice, and without reaching a decision on the merits.

**NEW YORK'S "SAVINGS STATUTE"**

66. Plaintiffs now bring this action in Federal Court pursuant to New York's "Savings Statute" as codified in NY CPLR § 205(a), seeking a more fair and objective venue in which to vindicate their claims.

67. New York's "Saving Statute", NY CPLR § 205(a), provides:

> "If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff... may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period."

68. In *Stair v. Calhoun*, the Eastern District of New York applied this rule, quoting the Court of Appeals of the State of New York:

> "CPLR 205(a) effectively tolls the running of a statutory period to permit refiling within six months when an action has been timely commenced but dismissed on grounds other than [as set forth therein]." *Stair v. Calhoun*, 2015 U.S. Dist. LEXIS 42766 (E.D.N.Y. Mar. 31, 2015), *citing Matter of Goldstein v. New York State Urban Dev. Corp.*, 13 N.Y. 3d 511, 520, 893 N.Y.S.2d 472, 921 N.E.2d 164 (N.Y. 2009).

69. In *Stair*, the Eastern District also quoted the Second Circuit, stating:

> CPLR 205(a) "allows the plaintiffs an additional six months in which to bring another action based on the same occurrences, after their timely initial complaint was dismissed for procedural defects." *Id, citing Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (1990).

70. If the order of dismissal is appealed, the six-month grace period afforded by

CPLR § 205 begins to run from the date of 'termination' of the appeal (See *Dinerman v. Sutton* 45 Misc. 2d 791, 792 (Sup.Ct. 1965); CPLR § 205 advisory comm. nn; See also *Buchholz v. United States Fire Ins. Co.* 269 A.D. 49, 51(App. Div. 1945) (Ruling that the grace period afforded under the predecessor statute to CPLR 205 runs from the termination of the first suit, and that termination occurs at the decision of the court of appeals.)

71. As mentioned above, the parties signed the Contingency Contract on December 29, 2005 as demonstrated in **Exhibit 2**.

72. New York requires that "an action upon a contractual obligation or liability, express or implied" must commence within six years. NY CPLR § 213(a).

73. The State Court Case was filed on April 15, 2011, and was therefore timely commenced within six years of the creation of Defendants contractual obligations and liabilities to Plaintiffs.

74. On October 18, 2018 the Appellate Division confirmed dismissal of the State Court Case without prejudice and without reaching a decision on the merits..

75. Consequently, the six-month grace period afforded by NY CPLR § 205(a) would apply, thereby allowing Plaintiffs to bring this action on or before April 18, 2018.

**COUNT ONE**

**(Breach of Contract)**

76. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 75 above as if fully set forth at length herein.

77. Plaintiffs and Defendants entered into written agreements whereby Plaintiffs agreed to render legal services on behalf of Defendant in China and Defendant agreed to pay Plaintiffs an agreed-upon contingency fee based upon the successful outcome of those services.

78. Plaintiffs provided such legal services to Defendant for well over four years, thereby satisfying their performance obligation under the terms of the written agreements.

79. The failure to pay Plaintiffs their agreed-upon contingency fees reflected in the written agreements amounts to a breach of contract.

80. By reason of the foregoing, Plaintiffs have been damaged in an amount to be proven at trial but reasonably believed to be in excess of US$7,467,922, plus interest accruing at the legal rate of 9% per annum, as well as costs and attorneys' fees.

**COUNT TWO**

**(*Quantum Meruit*)**

81. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 80 above as if fully set forth at length herein.

82. Plaintiffs discovered the asset owned by Lionda Group through investigation.

83. Upon this discovery, Plaintiffs commenced litigation in China to convert the Arbitration Award and to enforce the judgment by attaching the Asset.

84. The litigation resulted in the issuance of an Order validating the Arbitration Award and providing for enforcement against the Asset.

85. Defendant received the benefit of the legal services provided by Plaintiffs and has acknowledged their receipt of such services as well as benefits conferred by those services.

86. Defendant has failed and refused to pay for the reasonable value of the legal services provided by Plaintiffs, despite demands that they do so, and which in good conscience they ought to have paid.

87. Thus, in the alternative and by reason of the foregoing, Defendant damaged Plaintiffs in an amount to be proven at trial but reasonably believed to be in excess of

US$7,467,922, plus interest accruing at the legal rate of 9% per annum, as well as costs and attorneys' fees.

**COUNT THREE**

**(Implied-In-Fact Contract)**

88. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 87 above as if fully set forth at length herein.

89. Plaintiffs provided legal services to Defendant for well over four years, including the services provided pursuant to the written agreements that commenced in 2005 and continuing through NAFT's settlement.

90. During the entire period alleged, Plaintiffs provided legal services which Defendant accepted. Plaintiffs also provided legal services for nearly a year after the written agreements terminated, and for which the only fee terms the parties agreed to are the proper and/or intended valuation for such services, demonstrated in **Exhibit 13**.

91. The failure to pay contingency fees and any other fees due to the Plaintiffs reflected in the Contingency Contract and Supplemental Agreement and continuing agreement, amounts to a breach of implied-in-fact contract.

92. It was pursuant to Defendant's request that Plaintiffs continue to assist with recovering compensation based upon the judgment through settlement, specifically by advising Defendant as to its terms.

93. Plaintiffs also continued to provide contractual analysis, examination of documents, and other legal services for Defendant regarding the Settlement Agreement, as they had done during the term of the contract that should have ended on December 31, 2009.

94. The parties continued to act pursuant to the written agreement after its alleged

nominal deadline, with Plaintiffs providing legal advice and other services, and Defendant using Anderson's advice, continuing the attorney-client relationship.

95. Defendant indicated no change in the relationship whatsoever by accepting substantial legal work from Plaintiffs after the supposed date of termination.

96. Thus, in the alternative and by reason of the foregoing, Defendant has damaged Plaintiffs in an amount to be proven at trial but reasonably believed to be in excess of $7,467,922, plus interest accruing at the legal rate of 9% per annum, as well as costs and attorneys' fees.

**COUNT FOUR**

**(Breach of Fiduciary Duty)**

97. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 96 above as if fully set forth at length herein.

98. Defendant Lowinger, in her capacity as Director for Defendant NAFT, and by virtue of her signature on all of the aforementioned agreements with Plaintiffs, was acutely aware of the eighteen percent (18%) interest Plaintiffs held in any money, goods, assets, or other consideration obtained through Plaintiffs' enforcement actions.

99. As soon as Plaintiffs secured and attached the stock assets owned by Lionda Group pursuant to the Chinese Judgment, Plaintiffs were entitled to receive eighteen percent (18%) of the value of those creditor's rights assets.

100. Defendants owed Plaintiffs a fiduciary obligation to safeguard the value of Plaintiffs' interest in the attached assets.

101. Despite their knowledge of Plaintiffs' vested interest in the attached asset, Defendant Lowinger took deliberate actions to gratuitously assign away the majority interest and

corresponding value of those assets to the direct detriment of Plaintiffs.

102. Defendant NAFT was equally complicit and culpable for the actions taken by Defendant Lowinger since she purportedly undertook those actions in her capacity as Director for Defendant NAFT.

103. By reason of the foregoing, Defendant has damaged Plaintiffs in an amount to be proven at trial but reasonably believed to be in excess of US$7,467,922, plus interest accruing at the legal rate of 9% per annum, as well as costs and attorneys' fees.

**COUNT FIVE**

**(Unjust Enrichment)**

104. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 103 above as if fully set forth at length herein.

105. At the express direction of Defendants, Plaintiffs expended untold hours and resources, over multiple years, working as the agents of Defendant NAFT to enforce the Arbitration Award in China.

106. Those efforts proved successful and resulted in Plaintiffs obtaining the Chinese Judgment along with a secured creditor interest in 172,544,050 shares of stock, all for the benefit of Defendants.

107. Defendants have consistently refused to pay Plaintiffs for their efforts under the Contingency Contract and Supplementary Agreements. Equity and good conscience require restitution for Plaintiffs' efforts.

108. Thus, in the alternative and by reason of the foregoing, Defendant has damaged Plaintiffs in an amount to be proven at trial but reasonably believed to be in excess of $7,467,922, plus interest accruing at the legal rate of 9% per annum, as well as costs and

attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs demand trial by jury, and respectfully pray:

A. That Plaintiffs be awarded damages pursuant to Chinese law.

B. That Plaintiffs be awarded such other and further relief as the Court may deem just and proper.

Dated: New York, NY
April 16, 2019

[Anderson & Anderson LLP]

By:______________________.

Name: David C Buxbaum
Address: 30 Wall Street, 8th Floor
New York, NY 10005

*Attorney for Plaintiffs*